

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARY HARRIS,  as Personal
Representative of the
Estate of ASHLEY HARRIS, Deceased,

    Plaintiff,

vs.         Case No. 2:21-cv-10876
           Hon.  Mark A. Goldsmith
           Mag:  Elizabeth A. Stafford

CORIZON HEALTH INC.,
doing business as CORIZON OF MICHIGAN,
VINCENT PERNELL, MD,
LILLIE HARDIN-COLLINS, RN,
SANDRA J. TAYLOR, MA, LLP,
OFFICER HEAD and
JOHN DOES 1-12
      Defendants

_____/

| | |
|---|---|
| STEFFANI CHOCRON (P45335) | KYLE M. WILLIAMS (P77227) |
| KYLE J. KELLY (P69896) | Michigan Protection & Advocacy |
| LIPTON LAW CENTER, P.C. | Services |
| Attorneys for Plaintiff | Co-Counsel for Plaintiff |
| 18930 W. Ten Mile Road | 4095 Legacy Pkwy Ste 500 |
| Southfield, Michigan 48075 | Lansing, MI 48911-4264 |
| (248) 557-1688 | (517) 487-1755 |
| kyle@liptonlaw.com | KWilliams@drmich.org |

_____/

### **AMENDED COMPLAINT AND JURY DEMAND**

  NOW COMES Plaintiff, MARY HARRIS, Personal Representative of the

Estate of ASHLEY HARRIS by and through her attorneys, Lipton Law, PC., and

complains against the Defendants as follows:

18930 W Ten Mile Rd
Suite 3000
Southfield, MI  48075

Phone: 248.557.1688
Fax: 248.557.6344

www.liptonlaw.com



**LIPTON LAW**

THE EDGE YOU NEED

## INTRODUCTION

1.      This is a combined civil rights and medical malpractice action arising out of the in-custody death of 31-year-old Ashley Harris while she was an inmate at the Huron Valley Women's Correctional Facility. Ms. Harris was prescribed Thorazine (also known as chlorpromazine), an antipsychotic medication. Ms. Harris was given a lethal dose of Thorazine while in custody, causing her to overdose and die. Ms. Harris' cries for help were ignored, and she was left to languish for hours before she expired.

2.      As a direct result of these and other acts and omissions, Ashley Harris died. Plaintiff seeks compensatory and putative damages as well as reasonable attorney's fees and costs associated with this action pursuant to 42 USC § 1988.

## JURISDICTION

3.      This action is brought pursuant to 42 U.S.C. §1983 and the Fourth, Eighth, and Fourteenth Amendments of the United States Constitution and Michigan Law.

4.      Jurisdiction is based upon 28 U.S.C. §1331 and 1343(a)(1)(3)(4) and the aforementioned statutory provisions.

5.      Plaintiff further invokes supplemental jurisdiction of this court pursuant to 28 U.S.C. §1367(a) to hear and adjudicate state law claims.

18930 W Ten Mile Rd
Suite 3000
Southfield, MI 48075

Phone: 248.557.1688
Fax: 248.557.6344

www.liptonlaw.com



6.     Plaintiff brings this action on behalf of the estate of the deceased, Ashley Harris, having been duly appointed as Personal Representative of the Estate.

7.     The events giving rise to this Complaint arose in Ypsilanti, County of Washtenaw, State of Michigan.

8.     Venue is proper in the Eastern District of Michigan under 28 U.S.C. § 1391(b).

## **PARTIES**

9.     Plaintiff, Mary Harris, is the mother and duly appointed Personal Representative of the Estate of Ashley Harris, deceased, having been named and appointed by the Washtenaw County Probate Court, Judge Robert Carbeck, on June 22, 2020.

10.     Decedent, Ashley Harris, was a citizen of the United States and the State of Michigan, born on July 19, 1987, who died on September 14, 2018, while an inmate in the custody of the Huron Valley Women's Correctional Facility (hereafter "Huron Valley"), Washtenaw County, State of Michigan.

11.     Defendant, John Doe 1 is, upon information and belief, a citizen of the United States and the State of Michigan, who, at all times relevant hereto, was the XXX of Huron Valley Women's Correctional Facility. Defendant was responsible for establishing and enforcing policy and procedures at Huron Valley, and also responsible for hiring, training, and supervision of all correctional and

18930 W Ten Mile Rd
Suite 3000
Southfield, MI  48075

Phone: 248.557.1688
Fax: 248.557.6344

www.liptonlaw.com



LIPTON
LAW
THE EDGE YOU NEED

medical staff at the prison. Defendant Doe 1 is a "person" under 42 USC §1983. Defendant Doe 1 is sued in his or her individual capacity.

12.     Defendant, Corizon Health, Inc (hereinafter "Corizon") is a corporation organized and existing under the laws of the State of Delaware, that conducts business in Michigan under the name Corizon of Michigan, with its resident agent located at 40600 Ann Arbor Road, Suite 201, Plymouth, MI 48170.

13.     At all times relevant, Defendant, Corizon provided comprehensive medical services to the Huron Valley prison including staffing and training of prison nursing and medical personnel, formulating and enforcing policy/procedure regarding medical issues, administering and monitoring the prison medication/prescription program, performing daily inmate evaluations and distribution of medications, among other duties.

14.     At all times relevant, Defendant Corizon acted both directly and, with respect to state law negligence claims, by and through its' agents, employees, and ostensible agents, including the individual Defendants, both identified and unidentified.

15.     Defendant Corizon is sued in its' official and individual capacities and at all times relevant, was acting under color of state law and authority, and within the course, scope, and authority of its contractual relationship with Defendant

18930 W Ten Mile Rd
Suite 3000
Southfield, MI  48075

Phone: 248.557.1688
Fax: 248.557.6344

www.liptonlaw.com



LIPTON LAW

THE EDGE YOU NEED

Huron Valley, and is both directly liable and, with respect to state law negligence claims, vicariously liable for the acts of its employees.

16.     Vincent Pernell, MD, Lillie Hardin-Collins, RN, and Sandra J. Taylor, MA, LLP are residents of the State of Michigan and at all relevant times conducted business in the County of Washtenaw, as agents, employees and/or joint venturers of Co-Defendant Corizon Health, Inc.

17.     At all times relevant to this complaint, Vincent Pernell, MD was a licensed physician employed by or an agent of Defendant Corizon acting during the course, and within the scope, of his employment and/or agency. Dr. Pernell is sued in his individual capacity.

18.     At all times relevant to this complaint, Lillie Hardin-Collins, RN was a licensed nurse employed by or agents of Defendant Corizon and/or the Michigan Department of Corrections acting during the course, and within the scope, of their employment and/or agency. Ms. Hardin-Collins is sued in her individual capacity.

19.     At all times relevant to this complaint, Sandra J. Taylor, MA, LLP was a licensed psychologist employed by or agents of Defendant Corizon and/or the Michigan Department of Corrections, acting during the course, and within the scope, of their employment and/or agency. Ms. Taylor is sued in her individual capacity.

18930 W Ten Mile Rd
Suite 3000
Southfield, MI  48075

Phone: 248.557.1688
Fax: 248.557.6344

www.liptonlaw.com



20.     Defendant Corizon is vicariously liable for each and every negligent act, error, and omission of each of its employees, agents, and/or ostensible agents, including but not limited to Vincent Pernell, MD, Lillie Hardin-Collins, RN, and Sandra J. Taylor, MA. LLP.

21.     This Complaint is alternatively brought pursuant to the Michigan Wrongful Death Act for all damages contemplated thereunder.

22.     Attached to this Complaint are the Affidavits of Merit of Larry Kirstein, MD, Stephen Furman, RN, and Susan Clark, MA, LLP (Exhibits A, B, and C) for those allegations arising out of claims of medical malpractice.

23.     Defendant, John Doe 2 & 3, are currently unidentified nurses, practical nurses, psychologists, limited licensed psychologists, or otherwise licensed medical staff, who, upon information and belief, provided medical services to inmates, including, but not limited to decedent, Ashley Harris, at Huron Valley. These Defendants are a "person" under 42 USC §1983, and these Defendants are sued in his or her individual capacities.

24.     Defendants, John Doe 4 through 6, are currently unidentified, unlicensed healthcare workers, aides, medical assistants, or other providers providing medical services to inmates, including, but not limited to decedent, Ashley Harris, or otherwise working in the medical facilities at Huron Valley. These

18930 W Ten Mile Rd
Suite 3000
Southfield, MI 48075

Phone: 248.557.1688
Fax: 248.557.6344

www.liptonlaw.com



Defendants are a "person" under 42 USC §1983, and these Defendants are sued in his or her individual capacities.

25.    Defendant, Officer Head, is a Correctional Officer who had been assigned to supervise and care for inmates at Huron Valley at all times relevant, including decedent Ashley Harris.

26.    Defendants, John Doe 7 through 9, are currently unidentified Correctional Officers who had been assigned to supervise and care for inmates at Huron Valley at all times relevant, including decedent, Ashley Harris. These Defendants are a "person" under 42 USC §1983, and these Defendants are sued in his or her individual capacities.

27.    Defendant, John Doe 10 through 12 were, upon information and belief, the supervisors charged with the supervision of the medical staff and corrections officers within Huron Valley Women's Correctional Facility. These Defendants were responsible for enforcing the policy and procedures at Huron Valley, and also responsible for training and supervision of all correctional and medical staff at the prison. These Defendants are a "person" under 42 USC §1983, and these Defendants are sued in his or her individual capacities.

28.    At all relevant times, each individually named Defendant was acting under color of state law and in the course and scope of their employment and/or agency.

18930 W Ten Mile Rd
Suite 3000
Southfield, MI  48075

Phone: 248.557.1688
Fax: 248.557.6344

www.liptonlaw.com

7



LIPTON
LAW

THE EDGE YOU NEED

## **FACTS OF THE CASE**

29.     At all times relevant, decedent, Ashley Harris, was 31 years old, single, a resident of Washtenaw County, Michigan.

30.     On February 19, 2013, Ashley Harris was sentenced to 6 to 20 years in prison upon pleading guilty to arson in the Kent County Circuit Court.

31.     Ms. Harris was, at the time of her death, serving her sentence at the Huron Valley Women's Correctional Facility, Calhoun A block.

32.     Upon information and belief, Ms. Harris was placed in suicide observation cell, a type of segregated cell, on or about July 7, 2018 due to being a suicide risk. She was ordered to have one-on-one supervision by a Prisoner Observation Aid (hereafter "POA").

33.     POA's are fellow inmates that are tasked with observing at-risk prisoners.

34.     Ms. Harris was evaluated by Dr. Vincent Pernell on July 9, 2018 and was found to be suffering from auditory and visual hallucinations and delusions. She was kept in the suicide observation cell and the 1:1 POA observation was continued.

35.     As of July 9, 2018, Ms. Harris was receiving Thorazine (chlorpromazine) as part of her overall medication regimen.

18930 W Ten Mile Rd
Suite 3000
Southfield, MI  48075

Phone: 248.557.1688
Fax: 248.557.6344

www.liptonlaw.com



36.    Upon information and belief, Huron Valley utilized a computer system to record patient medical records, current medical orders, current prescriptions and medication orders, and the proper dosages and frequency for all medications to be administered (hereafter "system").

37.    Ms. Harris' dosage on that date was three 200g tablets (total of 600mg) at 9am, 600mg at 12pm, and four 200mg tablets (total of 800mg) at bedtime, for a total daily dosage of 2000mg.

38.    These medication orders appear as separate line items in the records, with the 600mg dosages occupying one line, and the 800mg dose occupying a second line ("HS" is the medical abbreviation for bedtime):

| Chlorpromazine Hcl UNTIL 01/19/19 | 200 Mg | 180 | 3 tabs po @9am & 12N (MUR APPROVED |
| Chlorpromazine Hcl 01/19/19 | 200 Mg | 120 | 4 tabs po q HS (MUR APPROVED UNTIL |

39.    Inmates such as Ms. Harris were expected to take their medication, and prison staff would check inmate's mouths to ensure the medicine was swallowed.

40.    Plaintiff's medication and dosages is confirmed by the medical records, which contain the following entries:

a.    On 7/22/18, Lillie Hardin-Collins, RN entered a verbal medication order from Vincent Pernell, MD that stated "Give Chlorpromazine

18930 W Ten Mile Rd
Suite 3000
Southfield, MI 48075

Phone: 248.557.1688
Fax: 248.557.6344

www.liptonlaw.com



HCL 200 mg. tabs three @ 0900 and 3 @ 1200. give 4 tabs @ Hs. Verbal Order Per Dr. Vincent E. Pernell, MD."

b. On 7/23/18, Vincent Pernell MD entered a written order for Chlorpromazine HCl 200mg 3 tablets (600mg) orally to be taken at 9:00AM and 12:00PM, and Chlorpromazine HCl 200mg 4 tablets orally (800mg) at bedtime.

c. On 9/11/18, the medication administration record shows that Chlorpromazine HCl 200mg 3 tablets (600mg) was given at 09:00 by "LHC," and 3 tablets (600mg) was given at 12:00PM by "LHC." "LHC" is presumably Lillie Hardin-Collins, RN

41. Plaintiff continued to be on 1:1 supervision.

42. This 2000mg/day dosage continued until September 11, 2018.

43. On September 11, 2018, Ms. Harris' Thorazine dosage was reduced by Dr. Pernell to 3 200mg tablets (total of 600mg) three times per day, for a new daily dosage of 1800mg. The new order appears as follows ("TID" means three times a day):

**NEW AND RENEWED MEDICATION ORDERS 09/11/2018 6:52 PM**

| Start Date | Stop Date | Medication | Dose | Sig Desc | |
|---|---|---|---|---|---|
| 09/11/2018 | 03/11/2019 | Topamax | 25 Mg | 1 tab po bid | |
| 09/11/2018 | 03/11/2019 | Trileptal | 300 Mg/5 Ml (60 Mg/ml) | 300mg(5mL) po bid | |
| 09/11/2018 | 01/19/2019 | Chlorpromazine Hcl | 200 Mg | 3 tabs po TID (MUR APPROVED UNTIL 01/19/2019) | |

44. The previous 600mg dosages were discontinued, as follows:

18930 W Ten Mile Rd
Suite 3000
Southfield, MI 48075

Phone: 248.557.1688
Fax: 248.557.6344

www.liptonlaw.com



LIPTON
LAW

THE EDGE YOU NEED

**MEDICATIONS STOPPED THIS ENCOUNTER**

| Start Date | Stop Date | Medication | Dose | Sig Desc | |
|---|---|---|---|---|---|
| 09/11/2018 | 09/11/2018 | Trileptal | 300 Mg/5 Ml (60 Mg/ml) | | 600mg(10mL) po bid |
| 07/23/2018 01/19/19) | 09/11/2018 | Chlorpromazine Hcl | 200 Mg | 3 tabs po @9am & 12N (MUR APPROVED UNTIL | |
| 05/30/2018 | 09/11/2018 | Trileptal | 300 Mg/5 Ml (60 Mg/ml) | | |

45.     However, the 800mg bedtime does was not discontinued.

46.     This resulted in Ms. Harris receiving the new dosage of 600mg three times a day, AND the old 800mg dose at bedtime, totaling a daily dose of 2600mg of Thorazine.

47.     Ms. Harris took the dosage as administered by the Defendants.

48.     2600mg of Thorazine is a lethal overdose.

49.     Ms. Harris received this lethal Thorazine overdose for multiple days.

50.     On 9/11/18, Chlorpromazine HCl 200mg 4 tablets (800mg) at bedtime was administered by an unidentified staff, making the total amount of Chlorpromazine HCl administered to Ms. Harris on 9/11/18 to be 2000mg.

51.     On 9/12/18, the medication administration record shows that Chlorpromazine HCl 200mg 3 tablets (600mg) was given at 09:00 by "LHC" and at 3 tablets (600mg) was given at 12:00 by "LHC."

52.     On 9/12/18, the medication administration record shows that Chlorpromazine HCl 200mg 3 tablets (600mg) was given at 21:00 by an unidentified staff "CO".

18930 W Ten Mile Rd
Suite 3000
Southfield, MI  48075

Phone: 248.557.1688
Fax: 248.557.6344

www.liptonlaw.com



53.    On 9/12/18, the medication administration record shows that Chlorpromazine HCl 200mg 4 tablets (800mg) was given at "HS" [bedtime] by an unidentified staff "CO." On 9/12/18, the total amount of Chlorpromazine HCl administered to Ms. Harris was 2600mg.

54.    On 9/13/18, the medication administration shows that Chlorpromazine HCl 200mg 3 tablets (600mg) was given at 08:00 by "LHC" and 3 tablets (600mg) was given at 12:00 by "LHC."

55.    On 9/13/18 at 12:21, Dr. Pernell entered an order to stop Chlorpromazine HCl 200mg 4 tablets orally (800mg) at HS (bedtime).

56.    On 9/13/18 at 14:25, Sandra J. Taylor, MA, LLP completed an Evaluation of Suicide Risk and noted that she was unable to evaluate Ms. Harris on this date because "patient was too drowsy to communicate. Ms. Taylor noted in her report "To be evaluated tomorrow."

57.    On 9/13/18, the medication administration record shows that Chlorpromazine HCl 200mg 3 tablets (600mg) was given at 21:00 by "LHC."

58.    On 9/13/18, the medication administration record shows that Chlorpromazine HCl 200mg 4 tablets (800mg) was given at "HS" (bedtime) by "LHC." On 9/13/18, the total amount of Chlorpromazine HCl administered to Ms. Harris was 2600mg.

18930 W Ten Mile Rd
Suite 3000
Southfield, MI  48075

Phone: 248.557.1688
Fax: 248.557.6344

www.liptonlaw.com

12



18930 W Ten Mile Rd
Suite 3000
Southfield, MI  48075

Phone: 248.557.1688
Fax: 248.557.6344

www.liptonlaw.com

59.    On September 13, 2018, Ashley Harris was doing poorly. Her afternoon POA (POA 1[1]) reported Ms. Harris looked pale and was unsteady on her feet.

60.    At approximately 4pm on September 12, 2018, POA 1 reported that Ms. Harris was twitching, and could not get up from her bed. Ms. Harris' lips turned purple, and she was complaining of pain in her torso.

61.    The POA records from this time were destroyed by the Defendants.

62.    POA 1 requested the nurse come see Ms. Harris.

63.    The nurse, Nurse Collins, refused to come and see Ms. Harris.

64.    POA 2 reported Ms. Harris' condition to a guard, Officer Head between 4pm and 5pm on September 13, 2018, and again requested the nurse come.

65.    Officer Head refused to help Ms. Harris and did not summon the nurse.

66.    POA 1 again requested that Nurse Collins come and see Ms. Harris, but Nurse Collins again refused, stating that she did not want to walk through the water on the floor, as the fire sprinklers had been turned on earlier that day and puddles had accumulated.

---

[1] Due to the public nature of filed Complaints, Plaintiff will only identify the prisoner observation aides by number, out of respect for their privacy. However, these individuals are known, and their full names will be provided as part of Plaintiff's disclosures.



67.     The POA requested help from Nurse Collins at least 10 times during the afternoon of September 13, 2018 and was refused each time.

68.     At approximately 10:32pm. POA 2 observed Ashley Harris crying and claiming that she was being attacked by worms.

69.     Soon thereafter, Ms. Harris began breathing abnormally and hyperventilating, as observed by POA 2.

70.     Ms. Harris became unresponsive at approximately 11:15pm. MCOC personnel responded and called an ambulance. The ambulance arrived at approximately 11:39pm.

71.     Ashley Harris was pronounced dead by the ambulance crew at 12:07am on September 14, 2018.

72.     Ashley's Harris' cause of death was determined by autopsy to be Thorazine toxicity.

73.     Ms. Harris' Thorazine levels were measured at 2900 ng/mL in her autopsy.

74.     To guard against overdose, it is imperative that the medical staff and corrections officers closely monitor the medication prescription and administration process, and closely observe the inmate to ensure the inmate is not in peril.

75.     Prescribing and administering a lethal dose of medication is "grossly inadequate medical care," which is "so grossly incompetent, inadequate, or

18930 W Ten Mile Rd
Suite 3000
Southfield, MI 48075

Phone: 248.557.1688
Fax: 248.557.6344

www.liptonlaw.com



LIPTON
LAW
THE EDGE YOU NEED

excessive as to shock the conscience or to be intolerable to fundamental fairness."
*Terrance v. Northville Reg'l Psychiatric Hosp*., 286 F.3d 834, 843 (6th Cir. 2002).

76.     Defendants were responsible for ensuring that the inmates received the proper medication, the proper dosage, and that the medications were properly administered to the inmates, in order to maintain the integrity and safety of the medication program.

77.     Upon information and belief, and as will be disclosed in discovery, the Defendants, collectively or individually, conducted the daily medication administration process, including the ordering of medication dosage and the administration of the medication to Ashley Harris at Huron Valley.

78.     Upon information and belief, defendant Pernell was responsible for prescribing the Thorazine to Ashley Harris and failing to ensure the proper dosages were entered into the system.

79.     Upon information and belief, defendants Hardin-Collins and Taylor were responsible for the administration of the Thorazine to Plaintiff, entry of the proper dosages into the system, and the supervision of other staff.

80.     Upon information and belief, John Doe 1 was responsible for establishing and enforcing policy and procedures at Huron Valley, and also responsible for hiring, training, and supervision of all correctional and medical staff at the prison.

18930 W Ten Mile Rd
Suite 3000
Southfield, MI  48075

Phone: 248.557.1688
Fax: 248.557.6344

www.liptonlaw.com



LIPTON
LAW

THE EDGE YOU NEED

81.     Upon information and belief, defendant Does 2-6 were nurses or medical staff responsible for staffing the medical department at Huron Valley Prison at various times prior to the very early morning of September 14, 2018, and were responsible for supervising Plaintiff's medication program and administrating the dosage and entering the physician orders into the system.

82.     Upon information and belief, Correctional Officers Does 7-9 to be identified in discovery, were also were responsible for the supervision, monitoring, and general welfare of the inmates while they were on the block.

83.     Upon information and belief, John Does 10-12 were the supervisors who were responsible for supervising the other medical and correctional staff during the performance of their various duties.

84.     With deliberate indifference, the medical staff and corrections officers did not properly monitor the inmates, including decedent, during the medication process, despite knowledge of Ms. Harris' significant medical issues, and despite knowledge of the serious adverse impact to inmates' health and safety if Thorazine is not administered in the proper dosage.

85.     With deliberate indifference, the medical staff and corrections officers failed to respond to reports that Ms. Harris was suffering from a medical emergency as was reported to the prison staff by the POAs.

18930 W Ten Mile Rd
Suite 3000
Southfield, MI 48075

Phone: 248.557.1688
Fax: 248.557.6344

www.liptonlaw.com



LIPTON LAW
THE EDGE YOU NEED

86. Defendants Pernell, Hardin-Collins, Taylor, Does 10-12, and others to be identified in discovery supervised the medical personnel providing medical care to the inmates, and in that capacity, enforced, or failed to enforce, policies and procedures of both Huron Valley and Corizon, particularly in regards to the medication protocol.

87. The prison administration and Corizon were aware of the lack of proper monitoring by the medical staff and corrections officers, and did nothing to address or correct the situation, resulting in a widespread policy and practice at Huron Valley.

88. This lack of proper monitoring was so widespread and pervasive within Huron Valley, that it developed into a customary practice, of which Defendants were aware of and condoned.

## COUNT I - DELIBERATE INDIFFERENCE TO CIVIL RIGHTS, PURSUANT TO 42 U.S.C. §1983 AND §1988 AND THE EIGHTH AND FOURTEENTH AMENDMENTS

89. All prior paragraphs of this Complaint are incorporated herein by reference, as if fully set forth.

90. The acts and omissions of all defendants in their individual and official capacities under the Eighth and Fourteenth Amendments to the Constitution, and 42 USC §1983 and §1988 were all performed under the color of state law and were unreasonable and performed knowingly, wantonly, deliberately,

18930 W Ten Mile Rd
Suite 3000
Southfield, MI 48075

Phone: 248.557.1688
Fax: 248.557.6344

www.liptonlaw.com



LIPTON
LAW
THE EDGE YOU NEED

indifferently intentionally, maliciously and with gross negligence, callousness and reckless indifference to plaintiff's wellbeing and serious medical needs and in reckless disregard to plaintiff's safety and with wanton intent for plaintiff to suffer the unnecessary and intentional infliction of pain and suffering by the failure to obtain medical treatment and failure to properly prescribe and administer medication, for which plaintiff is entitled to compensatory and punitive damages.

91.   That each individual defendant, the Defendant Does, Defendant Corizon, including all of its agents and/or employees, were acting under the color of state law when they deprived plaintiff of her clearly established rights, privileges and immunities in violation of Eighth and Fourteenth Amendments of the Constitution of the United States and of 42 USC §1983 and §1988.

92.   Defendants knew, or should have known, that decedent was being given a lethal overdose of Thorazine daily over the course of several days.

93.   Defendants knew and/or should have known that an inmate with decedent's mental health issues was unable to manage her own prescription dosages.

94.   Defendants knew, or should have known, that inmates with significant mental health issues would be especially vulnerable to, and at the mercy of, the prison staffs' actions regarding the prescription and administration of medication.

95.   Defendants knew that Ashley Harris was suffering from overdose related symptoms because they were informed by the POA.

18930 W Ten Mile Rd
Suite 3000
Southfield, MI 48075

Phone: 248.557.1688
Fax: 248.557.6344

www.liptonlaw.com



LIPTON
LAW
THE EDGE YOU NEED

96.    Defendants are responsible for ensuring the health, safety and well-being of inmates placed under their custody and control, and are responsible for enacting, enforcing and administering appropriate policy, procedure and practices to carry out this function.

97.    Pursuant to the Fourteenth Amendment to the United States Constitution, decedent had the right to be secure in her life and person and to receive proper medical care and attention while confined under state authority.

98.    Pursuant to the Eighth Amendment to the United States Constitution, decedent had the right to be free from cruel and unusual punishment and to receive proper medical care and attention while confined under state authority.

99.    In deliberate indifference to decedent's constitutional rights, Defendants failed to ensure that decedent was provided with adequate medical care while at Huron Valley prison.

100.    In deliberate indifference to decedent's constitutional rights, Defendants failed to properly and sufficiently monitor the administration of the medications to decedent and other inmates, to ensure that the medication was properly prescribed, dosed, and administered to inmates, particularly decedent.

101.    In deliberate indifference to decedent's constitutional rights, Defendants failed to properly and sufficiently monitor the administration of the

18930 W Ten Mile Rd
Suite 3000
Southfield, MI  48075

Phone: 248.557.1688
Fax: 248.557.6344

www.liptonlaw.com

19



LIPTON
LAW
*THE EDGE YOU NEED*

18930 W Ten Mile Rd
Suite 3000
Southfield, MI 48075

Phone: 248.557.1688
Fax: 248.557.6344

www.liptonlaw.com

medications to decedent and other inmates, to prevent lethal overdoses of medication from being administered.

102.   In deliberate indifference to decedent's constitutional rights, Defendants failed to respond to decedent's emergency health crisis, despite being informed numerous times by the POA that Ms. Harris was in peril.

103.   In deliberate indifference to decedent's constitutional rights, Defendants failed to observe and monitor decedent so as to ensure that she was not experiencing an emergency medical situation.

104.   In deliberate indifference to decedent's constitutional rights, Defendants failed to observe, supervise, control and monitor the nurses and correctional officers in decedent's cell block, to ensure that prisoners were receiving proper care and monitoring.

105.   In deliberate indifference to decedent's constitutional rights, Defendants forced Ashley Harris to take a lethal dose of Thorazine.

106.   That the defendants had actual and subjective knowledge of Plaintiff's serious medical needs, both of her need to be prescribed and administered the proper and safe dosage of Thorazine, and her need to receive prompt medical care when suffering from an overdose of Thorazine.

107.   As a direct and proximate result of Defendants' deliberate indifference to decedent's constitutional rights, as set forth herein, decedent was provided by the



LIPTON
LAW
THE EDGE YOU NEED

Defendant's with a lethal dose of Thorazine, resulting in serious physical injury, pain and suffering, mental anguish, and death from an accidental overdose.

108.   The actions of all named defendants manifested a deliberate indifference to decedent's constitutional rights in violation of the Eighth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. section 1983.

### COUNT II -DELIBERATE INDIFFERENCE TO DECEDENT'S SERIOUS MEDICAL NEEDS, PURSUANT TO 42 U.S.C. 1983 AND THE EIGHTH AMENDMENT.

109.   All prior paragraphs of this Complaint  are incorporated herein by reference, as if fully set forth.

110.   The acts and omissions of all defendants in their individual and official capacities under the Eighth Amendment to the Constitution, and 42 USC §1983 and were all performed under the color of state law and were unreasonable and performed knowingly, wantonly, deliberately, indifferently intentionally, maliciously and with gross negligence, callousness and reckless indifference to plaintiff's wellbeing and serious medical needs and in reckless disregard to plaintiff's safety and with wanton intent for plaintiff to suffer the unnecessary and intentional infliction of pain and suffering by the failure to obtain medical treatment and failure to properly prescribe and administer medication, for which plaintiff is entitled to compensatory and punitive damages.

18930 W Ten Mile Rd
Suite 3000
Southfield, MI  48075

Phone: 248.557.1688
Fax: 248.557.6344

www.liptonlaw.com



18930 W Ten Mile Rd
Suite 3000
Southfield, MI 48075

Phone: 248.557.1688
Fax: 248.557.6344

www.liptonlaw.com

111.   That the conduct of each individual Defendant, the Defendant Does, Defendant Corizon, including all of its agents and/or employees, were acting under the color of state law when they deprived plaintiff of her clearly established rights, privileges and immunities in violation of Eighth Amendment of the Constitution of the United States and of 42 USC §1983.

112.   Decedent's serious physiological problems, including the effects of medication regimen initiated by Defendants, constituted a serious medical need of which defendants knew, or should have known, and the actions and/or inactions of defendants, acting under color of state law, as set forth previously in this Complaint, constituted deliberate indifference to Decedent's serious medical needs, which could be expected to lead to serious physical injury, substantial pain and suffering, emotional distress, and death, all of which did occur.

113.   On the same basis set forth in Count I of this Complaint, Defendants acted with deliberate indifference to decedent's serious medical needs.

114.   That the defendants had actual and subjective knowledge of Plaintiff's serious medical needs, both of her need to be prescribed and administered the proper and safe dosage of Thorazine, and her need to receive prompt medical care when suffering from an overdose of Thorazine.

115.   As a direct and proximate result of Defendants' deliberate indifference to decedent's serious medical needs, as set forth herein, decedent was provided with



LIPTON
LAW
THE EDGE YOU NEED

a lethal dose of Thorazine, resulting in serious physical injury, pain and suffering, mental anguish, and death from an accidental overdose.

## COUNT III - DELIBERATE INDIFFERENCE TO CIVIL RIGHTS, PURSUANT TO 42 U.S.C. §1983 AND §1988 AND THE EIGHTH AND FOURTEENTH AMENDMENTS AND MONELL V DEPT. OF SOCIAL SERVICES

116.   All prior paragraphs of this Complaint are incorporated herein by reference, as if fully set forth.

117.   That acts and omissions of all defendants in their individual and official capacities under the Eighth and Fourteenth Amendments to the Constitution, and 42 USC §1983 and §1988 were all performed under the color of state law and were unreasonable and performed knowingly, wantonly, deliberately, indifferently intentionally, maliciously and with gross negligence, callousness and reckless indifference to plaintiff's wellbeing and serious medical needs and in reckless disregard to plaintiff's safety and with wanton intent for plaintiff to suffer the unnecessary and intentional infliction of pain and suffering by the failure to obtain medical treatment and failure to properly train, supervise, develop and implement policies and procedures for which plaintiff is entitled to compensatory and punitive damages.

118.   That the conduct of each individual defendant, including all of their agents and/or employees, were acting under the color of state law when they

18930 W Ten Mile Rd
Suite 3000
Southfield, MI 48075

Phone: 248.557.1688
Fax: 248.557.6344

www.liptonlaw.com



deprived plaintiff of her clearly established rights, privileges and immunities in violation of Eighth and Fourteenth Amendments of the Constitution of the United States and of 42 USC §1983 and §1988.

119. Defendants acted with deliberate indifference to decedent's constitutional rights by having a known custom, pattern, practice, and/or policy of inadequate training and inadequate observation and supervision of inmates in their care, custody and control, including those who are being administered medication such as decedent.

120. Defendants acted with deliberate indifference to decedent's constitutional rights by having a known custom, pattern, practice, and/or policy of permitting inadequate supervision of their correctional and medical staff. Specifically, Defendants' supervisory or administrative staff failed to ensure that the medical personnel and correctional officers provided adequate and thorough monitoring and observation of the prescription and administration of medications to inmates and of the general welfare of inmates.

121. This lack of proper monitoring was so widespread and pervasive within Huron Valley, that it developed into a customary practice, of which Defendants were aware of and condoned.

122. Defendants acted with deliberate indifference to decedent's constitutional rights by having a known custom, pattern, practice and/or policy of

18930 W Ten Mile Rd
Suite 3000
Southfield, MI 48075

Phone: 248.557.1688
Fax: 248.557.6344

www.liptonlaw.com



permitting inadequate supervision of inmates receiving medications to ensure that inmates were receiving the proper dosages of their medications and the proper dosages were entered into the system.

123. Defendants acted with deliberate indifference to decedent's constitutional rights by having a known custom, pattern, practice, and/or policy of failing to adequately monitor and observe inmates experiencing emergency health crises.

124. Defendants acted with deliberate indifference to decedent's constitutional rights by having a known custom, pattern, practice and policy of failing to monitor individual cells and cell blocks in which inmates receiving medications were housed, to prevent inmates from languishing untreated for days or hours following an overdose.

125. Defendants acted with deliberate indifference to decedent's constitutional rights by having a known custom, pattern, practice and policy of failing to respond to POA calls for help when an inmate was in peril.

126. Defendants acted with deliberate indifference to decedent's constitutional rights by having a known custom, pattern, practice, and/or policy of ignoring or discounting the warnings from the POAs.

127. Defendants acted with deliberate indifference to decedent's constitutional rights by having a known custom, pattern, practice and policy of

18930 W Ten Mile Rd
Suite 3000
Southfield, MI 48075

Phone: 248.557.1688
Fax: 248.557.6344

www.liptonlaw.com



LIPTON
LAW
THE EDGE YOU NEED

failing to train corrections officers and medical personnel to prevent violations of inmates' Constitutional rights.

128.   Defendants acted with deliberate indifference to decedent's constitutional rights by having a known custom, pattern, practice and policy of failing to train corrections officers and medical personnel to ensure that serious medical needs are being addressed after said needs are brought to the attention of corrections officers, and nurses or doctors.

129.   Defendants acted with deliberate indifference to decedent's constitutional rights by having a known custom, pattern, practice and policy of corrections officers and medical personnel treating inmates complaining of pain, sickness, and injury as malingerers undeserving of timely medical care.

130.   Defendants acted with deliberate indifference to decedent's constitutional rights by having a known custom, pattern, practice and policy of failing to train corrections officers and medical personnel in the correct and proper monitoring of the inmates' medication administration and regimens.

131.   Defendants acted with deliberate indifference to decedent's constitutional rights by having a known custom, pattern, practice and policy of failing to train medical personnel in the correct and proper methods of prescribing, dosing, and recording medications and medication orders into the medical record system.

18930 W Ten Mile Rd
Suite 3000
Southfield, MI  48075

Phone: 248.557.1688
Fax: 248.557.6344

www.liptonlaw.com



LIPTON
LAW

*THE EDGE YOU NEED*

18930 W Ten Mile Rd
Suite 3000
Southfield, MI 48075

Phone: 248.557.1688
Fax: 248.557.6344

www.liptonlaw.com

132. Defendants acted with deliberate indifference to decedent's constitutional rights by having a known custom, pattern, practice and policy that allowed inaccurate and incorrect medication orders to be left in effect.

133. Defendants acted with deliberate indifference to decedent's constitutional rights by having a known custom, pattern, practice and policy of failing to train the correctional officers in the proper procedures for ensuring inmates receive medical attention when it is required.

134. The violations of decedent's constitutional rights as set forth within, were a highly predictable consequence of the failures to train the medical personnel and corrections officers.

135. That the defendants had actual and subjective knowledge of Plaintiff's serious medical needs, both of her need to be prescribed and administered the proper and safe dosage of Thorazine, and her need to receive prompt medical care when suffering from an overdose of Thorazine.

136. As a direct and proximate result of Defendants' deliberate indifference to decedent's constitutional rights, as set forth herein, decedent was provided with a lethal overdose of Thorazine, and her deteriorating medical state went untreated and ignored by both the corrections officers and medical personnel, resulting in serious physical injury, pain and suffering, mental anguish, and death from an accidental overdose.



18930 W Ten Mile Rd
Suite 3000
Southfield, MI 48075

Phone: 248.557.1688
Fax: 248.557.6344

www.liptonlaw.com

## <u>COUNT - IV SUPERVISORY LIABILITY PURSUANT TO 42 USC § 1983</u>

137.   All prior paragraphs of this Complaint are incorporated herein by reference, as if fully set forth.

138.   As alleged previously herein, Plaintiff's decedent's rights were violated by the Defendants.

139.   The several of the Defendants were engaged in a supervisory capacity and personally involved in the violation of Ashley Harris' rights.

140.   Defendants acted with deliberate indifference to decedent's constitutional rights failing to supervise corrections officers and medical personnel in the correct and proper monitoring of the inmates' medication administration and regimens.

141.   Defendants acted with deliberate indifference to decedent's constitutional rights failing to supervise corrections officers and medical personnel in the proper procedures for ensuring inmates receive medical attention when it is required.

142.   Defendants acted with deliberate indifference to decedent's constitutional rights failing to supervise corrections officers and medical personnel in the proper procedures for ensuring medication orders are properly and correctly entered into the system, including orders to discontinue medications.



143.   The violations of decedent's constitutional rights as set forth within, were a highly predictable consequence of the failures to supervise the medical personnel and corrections officers.

144.   As a direct and proximate result of Defendants' deliberate indifference to decedent's constitutional rights, as set forth herein, decedent was provided with a lethal overdose of Thorazine, and her deteriorating medical state went untreated and ignored by both the corrections officers and medical personnel, resulting in serious physical injury, pain and suffering, mental anguish, and death from an accidental overdose.

## COUNT V – ORDINARY NEGLIGENCE AS TO JOHN DOE 2-6 AND CORIZON

145.   All prior paragraphs of this Complaint are incorporated herein by reference, as if fully set forth.

146.   At all times relevant, Defendant Corizon provided comprehensive medical services to the Huron Valley prison, including but not limited to, staffing and training of prison nursing and medical personnel, formulating and enforcing policy and procedure regarding medical issues, performing daily inmate medical evaluations, administering and monitoring the inmate medication program, and distributing medications to the inmates.

18930 W Ten Mile Rd
Suite 3000
Southfield, MI  48075

Phone: 248.557.1688
Fax: 248.557.6344

www.liptonlaw.com



LIPTON
LAW
THE EDGE YOU NEED

147.  At all times relevant, Defendant Corizon acted both directly and through its' agents, employees and ostensible agents, including both identified and unidentified individual defendants.

148.  Upon information and belief, at all times relevant, Defendants John Doe 2-6 were agents, servants, ostensible agents of Corizon, acting within the course and scope therof in providing nursing and medical services to the inmates at Huron Valley.

149.  John Doe 2-6 owed a duty of reasonable care to decedent, as an inmate of the Huron Valley who was under the complete custody, control, and care of all Defendants during his incarceration.

150.  The injuries and damages to Plaintiff and Decedent were caused by the ordinary negligence of the John Doe 2-6 by failing to enter the correct medication orders into the computer system and causing duplicative orders to remain, resulting in Ashley Harris being administered an overdose of Thorazine.

151.  In addition to the above, the John Doe 2-6 acted with negligence, carelessness and deviated from their duty of reasonable care.

152.  The negligence, carelessness and deviations from applicable duty of reasonable care of John Doe 2-6 were done during the course and scope of their employment, agency, servitude and/or ostensible agency with Defendant Corizon, as a result of which, this latter Defendant is vicariously liable to Plaintiff.

18930 W Ten Mile Rd
Suite 3000
Southfield, MI  48075

Phone: 248.557.1688
Fax: 248.557.6344

www.liptonlaw.com



18930 W Ten Mile Rd
Suite 3000
Southfield, MI  48075

Phone: 248.557.1688
Fax: 248.557.6344

www.liptonlaw.com

153.   As a direct and proximate result of over-prescribing and over-administering the drug Chlorpromazine, as well as failing to recognize and report signs and symptoms of an adverse response to a medication, Defendants created the condition where Ms. Harris would suffer from Chlorpromazine toxicity, leading to her acute cardiopulmonary arrest on 9/13/18.

154.   As a direct and proximate result of Defendants' negligence, carelessness and deviations from applicable duty of reasonable care, as set forth herein, Defendant's negligence resulted in serious physical injury, pain and suffering, mental anguish, and death.

## <u>COUNT VI – ORDINARY NEGLIGENCE AS TO PERNELL, HARDIN-COLLINS, AND TAYLOR</u>

155.   All prior paragraphs of this Complaint are incorporated herein by reference, as if fully set forth.

156.   Defendant Vincent Pernell, MD, individually, and Corizon, as his principals, agents and/or employers owed Plaintiff's decedent the obligation to take reasonable care to provide for her well-being by recognizing and prescribing safe doses of Chlorpromazine.

157.   Defendant Lillie Hardin-Collins, RN, individually, and Corizon, as her principals, agents and/or employers breached their obligations to take



reasonable care to protect Plaintiff's decedent and provide for her safety by failing to recognize and administering excessive doses of Chlorpromazine.

158.   Defendant Sandra J. Taylor, MA, LLP, individually, and Corizon, as her principals, agents and/or employers breached their obligations to take reasonable care to protect Plaintiff's decedent and provide for her safety by failing to report a change in Mr. Harris's level of consciousness to a physician and failing to recognize that Ms. Harris's altered level of consciousness was a manifestation of an adverse response to a medication.

159.   As a direct and proximate result of over-prescribing and over-administering the drug Chlorpromazine, as well as failing to recognize and report signs and symptoms of an adverse response to a medication, Defendants created the condition where Ms. Harris would suffer from Chlorpromazine toxicity, leading to her acute cardiopulmonary arrest on 9/13/18.

160.   As a direct and proximate result of Defendants' negligence, carelessness and deviations from applicable duty of reasonable care, as set forth herein, Defendant's negligence resulted in serious physical injury, pain and suffering, mental anguish, and death.

## **COUNT VII – MEDICAL MALPRACTICE (Pernell and Corizon)**

161.   All prior paragraphs of this Complaint are incorporated herein by reference, as if fully set forth.

18930 W Ten Mile Rd
Suite 3000
Southfield, MI  48075

Phone: 248.557.1688
Fax: 248.557.6344

www.liptonlaw.com



LIPTON
LAW
THE EDGE YOU NEED

162.   The Standard of Care applicable to Defendants Vincent Pernell, MD and Corizon, which are vicariously liable for the acts and omissions of its physicians, and its employees, agents, principals, and joint venturers, involved in the care of Ashley Marie Harris, was to:

a.   Exercise that degree of reasonable medical judgment and provide appropriate medical care that a reasonable Psychiatrist would under same or similar circumstances;

b.   Ensure that medication orders entered and/or modified in an electronic medical record system or paper medical record are timely, accurate, and clearly communicated to nursing and other direct patient care staff;

c.   Recognize that it is incumbent upon the prescribing physician to ensure that medication orders are entered accurately in an electronic medical record system or paper medical record;

d.   When prescribing or modifying a medication, ensure that the nursing staff and other direct patient care providers are aware of and can recognize potential side effects and clinical indicators of drug toxicity;

e.   Recognize and communicate to staff that administering excessive doses of Chlorpromazine may result in drug toxicity, and that signs and symptoms may include sedation/lethargy, difficulty in breathing, cyanosis,

18930 W Ten Mile Rd
Suite 3000
Southfield, MI  48075

Phone: 248.557.1688
Fax: 248.557.6344

www.liptonlaw.com



LIPTON LAW

THE EDGE YOU NEED

respiratory and/or vasomotor collapse, respiratory depression and distress, sudden apnea, hypotension, cardiac arrhythmias and conduction defects or cardiac arrest;

f.      Carefully review medication orders to ensure that safe and appropriate doses of Chlorpromazine HCl are prescribed;

g.      Refrain from over-prescribing Chlorpromazine HCl;

h.      Upon discovering an error in over-prescribing Chlorpromazine HCl, take immediate action to examine the patient, notify nursing, pharmacy, and other direct patient care staff of the prescribing error, document the incident and all actions taken, provide clear information/instructions to staff to closely monitor the patient for signs/symptoms of toxicity, and obtain STAT Chlorpromazine level;

i.      As the physician prescribing psychotropic medications, perform a complete physical and mental examination of the patient and document same;

j.      As the physician prescribing psychotropic medications, document the rationale for changing a medication regimen, the anticipated outcome, and a follow-up date to evaluate the effectiveness of the medication change;

k.      Other standards as shall be revealed in discovery.

18930 W Ten Mile Rd
Suite 3000
Southfield, MI  48075

Phone: 248.557.1688
Fax: 248.557.6344

www.liptonlaw.com



163.   Defendant Pernell breached the applicable standards of care by failing to act in compliance with these standards.

164.   As a direct and proximate result of Defendant Dr. Vincent Pernell's failure to comply with the applicable standards of care, and of Corizon, as his principal and employer, resulted in the unnecessary suffering and preventable death Ashley Marie Harris. Had Defendants complied with the applicable standards of care, Mrs. Harris would not have received excessive doses of Chlorpromazine and consequently suffered an acute and fatal cardiopulmonary arrest.

## **COUNT VIII – MEDICAL MALPRACTICE (Hardin-Collins and Corizon)**

165.   All prior paragraphs of this Complaint are incorporated herein by reference, as if fully set forth.

166.   The Standard of Care applicable to Defendants Lillie Hardin-Collins, RN and Corizon, which is vicariously liable for the acts and omissions of its nursing staff, and its employees, agents, principals, and joint venturers, involved in the care of Ashley Marie Harris, was to:

a.   Exercise that degree of reasonable clinical judgment and provide appropriate care that a reasonable RN would under the same or similar circumstances;

18930 W Ten Mile Rd
Suite 3000
Southfield, MI  48075

Phone: 248.557.1688
Fax: 248.557.6344

www.liptonlaw.com



LIPTON
LAW
THE EDGE YOU NEED

b.      Carefully review medication orders entered by a physician and ensure that the medication administration records accurately reflect the physician's orders;

c.      Refrain from administering excessive amounts/doses of medications, such as Chlorpromazine;

d.      Recognize that administering excessive doses of Chlorpromazine may result in drug toxicity, and that signs and symptoms may include sedation/lethargy, difficulty in breathing, cyanosis, respiratory and/or vasomotor collapse, respiratory depression and distress, sudden apnea, hypotension, cardiac arrhythmias and conduction defects or cardiac arrest;

e.      Upon discovering an error in over-administering Chlorpromazine HCl, take immediate action to examine the patient, notify the prescribing physician, pharmacy, and other direct patient care staff, document the incident and all actions taken, closely monitor the patient for signs/symptoms of toxicity, and obtain a STAT Chlorpromazine level;

f.      Advocate for a patient by questioning a physician's order for an excessive amount/dose of Chlorpromazine HCl and document same;

g.      Timely notify a physician of a change in the patient's physical, mental, or psychosocial status (i.e., a deterioration in health, mental, or psychosocial status in either life-threatening conditions or clinical

18930 W Ten Mile Rd
Suite 3000
Southfield, MI  48075

Phone: 248.557.1688
Fax: 248.557.6344

www.liptonlaw.com



complications.), including the patient's inability to communicate due to being "too drowsy";

h.      Refrain from refusing to assess a patient who is experiencing an acute adverse event, particularly when other staff request nurse assistance multiple times;

i.      Advocate for a patient who cannot advocate for herself by immediately assessing a patient who is experiencing an acute adverse event;

j.      Other standards as shall be revealed in discovery.

167.   Defendants Lillie Hardin-Collins, RN and Corizon, as her principal and employer, breached the applicable standards of care by failing to act in compliance with these standards.

168.   As a direct and proximate result of Defendants' Lillie Hardin-Collins, RN, and Corizon, as her principal and employer, failure to comply with the applicable standards of care, Ashley Marie Harris suffered an untimely and preventable death.  Had Defendants complied with the applicable standards of care, Mrs. Harris would not have received excessive doses of Chlorpromazine, resulting in an acute and fatal cardiopulmonary arrest.

## **COUNT IX – MEDICAL MALPRACTICE (Taylor and Corizon)**

169.   All prior paragraphs of this Complaint are incorporated herein by reference, as if fully set forth.

18930 W Ten Mile Rd
Suite 3000
Southfield, MI  48075

Phone: 248.557.1688
Fax: 248.557.6344

www.liptonlaw.com



LIPTON
LAW
THE EDGE YOU NEED

170.   The Standard of Care applicable to Defendants Sandra J. Taylor, MA, LLP and Corizon, which is vicariously liable for the acts and omissions of its mental health staff, and its employees, agents, principals, and joint venturers, involved in the care of Ashley Marie Harris, was to:

a.   Exercise that degree of reasonable clinical judgment and provide appropriate care that a reasonable psychologist would under the same or similar circumstances;

b.   Carefully review the patient's medical and behavioral health records to maintain continuity of care and to evaluate for pertinent changes in the patient's medical/behavioral status;

c.   Communicate and collaborate with other disciplines with regard to the care and treatment of a patient by reporting observed behavioral changes in relation to symptom/disease progression, medication, and other interventions;

d.   Recognize that a patient receiving psychotropic medications may experience deleterious effects, such as drug toxicity, and that signs and symptoms may include sedation/lethargy, delusions, auditory or visual hallucinations difficulty in breathing, cyanosis, respiratory and/or vasomotor collapse, respiratory depression and distress, sudden apnea, hypotension, cardiac arrhythmias and conduction defects or cardiac arrest;

18930 W Ten Mile Rd
Suite 3000
Southfield, MI 48075

Phone: 248.557.1688
Fax: 248.557.6344

www.liptonlaw.com



e.      Recognize and report the signs and symptoms of adverse medication reaction, including but not limited to sedation/lethargy, delusions, auditory or visual hallucinations difficulty in breathing, cyanosis, respiratory and/or vasomotor collapse, respiratory depression and distress, sudden apnea, hypotension, cardiac arrhythmias and conduction defects or cardiac arrest;

f.      Immediately notify a physician or nurse of a significant change in the patient's physical, mental, or psychosocial status (i.e., a deterioration in health, mental, or psychosocial status in either life-threatening conditions or clinical complications.), including the patient's inability to communicate due to being "too drowsy" and document same;

g.      Other standards as shall be revealed in discovery.

171.   Defendants Sandra J. Taylor, MA, LLP and Corizon, as her principal and employer, breached the applicable standards of care by failing to act in compliance with these standards.

172.   As a direct and proximate result of Defendants' Sandra J. Taylor, MA, LLP, and Corizon, as her principal and employer, failure to comply with the applicable standards of care, Ashley Marie Harris suffered an untimely and preventable death. Had Defendants complied with the applicable standards of care, the acute change in Mrs. Harris's level of consciousness would have been reported timely to a physician and the error in over-prescribing the drug Chlorpromazine

18930 W Ten Mile Rd
Suite 3000
Southfield, MI  48075

Phone: 248.557.1688
Fax: 248.557.6344

www.liptonlaw.com



would have been recognized. Instead, Ms. Harris's level of consciousness went unreported and she was given excessive doses of Chlorpromazine, resulting in an acute and fatal cardiopulmonary arrest.

WHEREFORE, Plaintiff, MARY HARRIS requests the following relief:

A. A declaratory judgement in favor of the Plaintiff that Defendants' practices and policies related to medication administration for prisoners with mental illness housed in the Woman's Huron Valley Correctional Facility unlawful in violation of Due Process and related law;

B. Entry of judgment against Defendants, jointly and severally, for compensatory non-economic and economic damages including but not limited to all damages recoverable under the laws of the United States, and of the State of Michigan, and the Michigan Wrongful Death Act;

C. Punitive damages;

D. Reasonable attorney fees, costs and interest;

E. Any and all damages previously listed in this Complaint; and

F. Such other and further relief as appears reasonable and just under the circumstances.

Respectfully submitted,

LIPTON LAW, P.C.

By  /s/ STEFFANI CHOCRON
STEFFANI CHOCRON (P45335)
KYLE J. KELLY (P69863)
Attorneys for Plaintiff
18930 W, 10 Mile Road
Southfield, Michigan 48075
(248) 557-1688

Dated:  June 30, 2021

18930 W Ten Mile Rd
Suite 3000
Southfield, MI 48075

Phone: 248.557.1688
Fax: 248.557.6344

www.liptonlaw.com

40



**LIPTON
LAW**

*THE EDGE YOU NEED*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARY HARRIS,
as Personal Representative of the
Estate of ASHLEY HARRIS, Deceased,

        Plaintiff,

vs.

        Case No. 2:21-cv-10876
        Hon.  Mark A. Goldsmith
        Mag:  Elizabeth A. Stafford

CORIZON HEALTH INC,
doing business as CORIZON OF MICHIGAN,
VINCENT PERNELL, MD,,
LILLIE HARDIN-COLLINS, RN,
SANDRA J. TAYLOR, MA, LLP,
OFFICER HEAD, and
JOHN DOES 1-12

        Defendants

_____/

STEFFANI CHOCRON (P45335)
KYLE J. KELLY (P69896)
LIPTON LAW CENTER, P.C.
Attorneys for Plaintiff
18930 W. Ten Mile Road
Southfield, Michigan 48075
(248) 557-1688
ron@liptonlaw.com
_____/

## **JURY DEMAND**

    Plaintiffs hereby relies upon their previously filed Jury Demand in the above matter.

18930 W Ten Mile Rd
Suite 3000
Southfield, MI  48075

Phone: 248.557.1688
Fax: 248.557.6344

www.liptonlaw.com



LIPTON
LAW
THE EDGE YOU NEED

Respectfully submitted,

LIPTON LAW, P.C.

By  /S/ STEFFANI CHOCRON
STEFFANI CHOCRON (P45335)
KYLE J. KELLY (P69863)
Attorneys for Plaintiff
18930 W, 10 Mile Road
Southfield, Michigan 48075
(248) 557-1688

Dated:  June 30, 2021

18930 W Ten Mile Rd
Suite 3000
Southfield, MI  48075

Phone: 248.557.1688
Fax: 248.557.6344

www.liptonlaw.com