**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**

MARY HARRIS, as Personal Representative of the Estate of ASHLEY HARRIS, Deceased,

Plaintiff,

v.

Corizon Health Inc., d/b/a Corizon of Michigan, et al.,

Defendants.

Case No. 2:21-cv-10876
Hon. Mark A. Goldsmith
Mag. Elizabeth A. Stafford

LIPTON LAW CENTER, P.C.
Steffani Chocron (P45335)
Kyle J. Kelly (P69896)
Attorneys for Plaintiff
18930 W. Ten Mile Rd.
Southfield, MI 48075
(248) 557-1688
steffani@liptonlaw.com
kyle@liptonlaw.com

MICHIGAN PROTECTION & ADVOCACY SERVICES
Kyle M. Williams (P77227)
Kristin Totten (P72942)
Co-Counsel for Plaintiff
4095 Legacy Pkwy, Ste. 500
Lansing, MI 48911
(517) 487-1755
kwilliams@drmich.org
ktotten@drmich.org

CHAPMAN LAW GROUP
Ronald W. Chapman Sr., M.P.A., LL.M. (P37603)
Jonathan C. Lanesky (P59740)
Attorneys for Corizon Health, Inc. and Vincent Pernell, M.D.
1441 W. Long Lake Rd., Suite 310
Troy, MI 48098
(248) 644-6326
rchapman@chapmanlawgroup.com
jlanesky@chapmanlawgroup.com

MICHIGAN DEPT. OF ATTORNEY GENERAL
John L. Thurber (P44989)
Sara E. Trudgeon (P70066)
Attorneys for MDOC Defendants
P.O. Box 30217
Lansing, MI 48909
(517) 335-3055
thurberj@michigan.gov
trudgeons@michigan.gov

**AFFIDAVIT OF MERITORIOUS DEFENSE ON BEHALF OF DEFENDANTS CORIZON HEALTH, INC.; AND VINCENT PERNELL, M.D.**

STATE OF MICHIGAN )<br>
) SS<br>
COUNTY OF WASHTENAW )

Vincent Pernell, M.D., a board-certified physician in psychiatry being first duly sworn, deposes and states:

1. At the times pertinent to Plaintiffs' Amended Complaint, and for the year prior to the alleged malpractice, I maintained my license to practice medicine in the state of Michigan and devoted a majority of my professional time to the active and clinic practice of psychiatry.
2. I have reviewed the Complaint and Amended Complaint filed by Mary Harris in Case No.: 2:21-cv-10876, the Affidavit of Merit of Larry Kirstein, M.D., the Notice of Intent, and the relevant medical records in this matter, including but not limited to Ashley Harris' MDOC medical records which were supplied to me by Defense Counsel.

**Applicable Standard of Care**

3. The standard of care applicable is doing that which a reasonable and competent psychiatrist would have done under the same or similar circumstances or that which another reasonable and competent psychiatrist would have in treating a

patient like Ashley Harris in a prison setting like Huron Women's Correctional Facility.

**Factual Basis**

4. In September 2018, Ashley Harris, then age thirty (30), was a female inmate at Women's Huron Valley Correctional Facility in Ypsilanti, MI.
5. On July 6, 2018, Ms. Harris was placed in segregation on 1:1 direct continuous observation due to concerns for self-harm. Among the medications in Ms. Harris' treatment regimen on July 6, 2018, was Chlorpromazine HC1, also known as Thorazine. She was prescribed Chlorpromazine HC1 200mg three (3) tablets (total 600mg) orally to be taken at 9:00 A.M. and 12:00 P.M., and 200mg four (4) tablets (total 800mg) at bedtime. Ms. Harris was also prescribed Lithium Carbonate 450mg orally three (3) times daily at 8:00 A.M., 12:00 P.M., and 9:00 P.M.; Naltrexone HC1 50mg at 1:00 P.M. daily; and Oxcarbazepine 300mg orally three (3) times daily at 8:00 A.M., 12:00 P.M., and 9:00 PM.
6. On July 22, 2018, Lillie Hardin-Collins, R.N., entered a verbal medication order from Vincent Pernell, M.D. that stated "Give Chlorpromazine HCL 200mg tabs three @ 0900 and 3 @ 1200. Give 4 tabs @ Hs. Verbal Order Per Dr. Vincent E. Pernell, M.D."
7. On July 23, 2018, Vincent Pernell M.D. entered a written order for Chlorpromazine HC1 200mg three (3) tablets (600mg) orally to be taken at 9:00

A.M. and 12:00 P.M., and Chlorpromazine HC1 200mg four (4) tablets orally (800mg) at bedtime. The total daily dose of Chlorpromazine HC1 was 2000mg.

8. On September 11, 2018, at 6:52 P.M.: Dr. Pernell entered an order to stop Chlorpromazine HC1 200mg tablets (600mg) orally at 9:00 A.M. and 12:00 P.M. and entered a new order to give Chlorpromazine HC1 200mg three (3) tablets (600mg) orally TID (three times daily), for a total daily dose of Chlorpromazine HC1 1800mg.
9. On September 12, 2018, at 9:00 A.M. and 12:00 P.M.: The medication administration shows that Chlorpromazine HC1 200mg three (3) tablets (600mg) was given at 9:00 A.M. by "LHC" and at 12:00 P.M., three (3) tablets (600mg) by "LHC."
10. On September 12, 2018, at 9:00 P.M.: The medication administration shows that Chlorpromazine HC1 200mg three (3) tablets (600mg) was given at 9:00 P.M. by an unidentified staff "CO."
11. On September 12, 2018, at HS (bedtime), The medication administration record shows that Chlorpromazine HC1 200mg four (4) tablets (800mg) was not given at "HS" [bedtime] by an unidentified staff "CO." On September 12, 2018, the total amount of Chlorpromazine HC1 administered to Ms. Harris was 1800mg.
12. On September 13, 2018, at 8:00 A.M. and 12:00 P.M.: The medication administration shows that Chlorpromazine HC1 200mg three (3) tablets (600mg)

was given at 8:00 A.M. by "LHC" and at 12:00 P.M., three (3) tablets (600mg) by "LHC."

13. Later that afternoon at 12:21 P.M., after being informed of the omission by nurse Collins, Dr. Pernell entered an order to stop Chlorpromazine HC1 200mg four (4) tablets orally (800mg) at HS (bedtime).

14. At 4:03 P.M., an administrative note and chart review by Kent D. Filsinger, P.A. reflects medications that were active on that date. Chlorpromazine HC1 200mg three (3) tabs (600mg) TID was included in the list of active medications. Mr. Filsinger documented that those medications that were stopped on this date included Chlorpromazine HC1 200mg four (4) tabs (800mg) po q HS.

15. At or around 10:00 P.M., according to the Prisoner Observation Aide Documentation Repot Form, Ms. Harris was observed meditating by the Prisoner Observation Aide ("POA"). Thirty-two (32) minutes later, Ms. Harris was observed drinking water by POA Diamond Andre. At or around 10:52 P.M., Ms. Harris was observed naked and talking out loud by POA Diamond Andre. At or around 11:00 P.M., Ms. Harris was observed crying and stating there were worms on her foot by POA Diamond Andre. Ten (10) minutes later, Ms. Harris was observed hyperventilating by POA Diamond Andre. At or around 11:15 P.M., Ms. Harris was not responding to her name, as observed by POA Diamond Andre.

Two (2) minutes later, POA Diamond Andre noted that the commanding officer "came down."

16. By 11:23 P.M., POA Diamond Andre noted that all medical staff were on the scene. At or around 11:30 P.M., POA Diamond Andre noted that Ms. Harris was on the floor unresponsive and "reviving." The ambulance is noted to have arrived nine (9) minutes later.

17. At 12:22 A.M., Katie Guyor, R.N. entered a note indicating that she arrived on the unit and found Ms. Harris on her bed unresponsive. R.N. Guyor noted that an automated external defibrillator was attached, and CPR was in progress. Ms. Harris was moved to the floor and CPR was continued. Advanced Life Support was initiated when Huron Valley Ambulance (HVA) arrived, and the efforts continued until HVA contacted St. Joseph Mercy Hospital and received an order to cease efforts at 12:07 A.M. Ms. Harris was pronounced dead at 12:07 A.M.

**Manner of Compliance with Standard of Care**

18. After a review of the aforementioned pleadings, documents and relevant medical records, it is my professional opinion that Vincent Pernell, M.D., and Corizon Health, Inc., complied with the applicable standard of care of in all respects regarding their care and treatment of Ashley Harris.

19. Contrary to the allegation in the Amended Complaint and the Affidavit of Merit of Larry Kristen, M.D., Vincent Pernell, M.D. did exercise that degree of

reasonable medical judgment and provide appropriate medical care that a reasonable Psychiatrist would under same or similar circumstances.

20. Contrary to the allegation in the Amended Complaint and the Affidavit of Merit of Larry Kirstein, M.D., Vincent Pernell, M.D. did ensure that medication orders were entered and/or modified in an electronic medical record system or paper medical record are timely, accurate, and clearly communicated to nursing and other direct patient care staff.

21. Contrary to the allegation in the Amended Complaint and the Affidavit of Merit of Larry Kirstein, M.D., Vincent Pernell, M.D. did recognize that it is incumbent upon the prescribing physician to ensure that medication orders are entered accurately in an electronic medical record system or paper medical record.

22. Contrary to the allegation in the Amended Complaint and the Affidavit of Merit of Larry Kirstein, M.D., Vincent Pernell, M.D. did ensure that the nursing staff and other direct patient care providers were aware of and could recognize potential side effects and clinical indicators of drug toxicity.

23. Contrary to the allegation in the Amended Complaint and the Affidavit of Merit of Larry Kirstein, M.D., Vincent Pernell, M.D. did communicate to staff that the signs and symptoms of drug toxicity.

24. Contrary to the allegation in the Amended Complaint and the Affidavit of Merit of Larry Kirstein, M.D., Vincent Pernell, M.D. did carefully review medication

orders to ensure that safe and appropriate doses of Chlorpromazine HC1 were prescribed.

25. Contrary to the allegation in the Amended Complaint and the Affidavit of Merit of Larry Kirstein, M.D., Vincent Pernell, M.D. did not over-prescribe Chlorpromazine HC1.

26. Contrary to the allegation in the Amended Complaint and the Affidavit of Merit of Larry Kirstein, M.D., Vincent Pernell, M.D. did take immediate action to notify nursing and correct the record.

27. Contrary to the allegation in the Amended Complaint and the Affidavit of Merit of Larry Kirstein, M.D., Vincent Pernell, M.D. did perform a physical and mental examination of the patient and document same.

28. Contrary to the allegation in the Amended Complaint and the Affidavit of Merit of Larry Kirstein, M.D., Vincent Pernell, M.D. did document the rationale for changing a medication regimen and evaluate the effectiveness of the medication change.

## No Proximate Cause

29. Contrary to the allegation in the Amended Complaint and the Affidavit of Merit of Larry Kirstein, M.D., there is no proximate cause between the alleged injuries claimed by Plaintiff and the actions and or omissions by Defendants Vincent Pernell, M.D., and Corizon Health, Inc.

30. Contrary to the allegation in the Amended Complaint and the Affidavit of Merit of Larry Kirstein, M.D., the alleged injuries, and damages in this case are not related to Vincent Pernell, M.D., and Corizon Health, Inc.'s care, and treatment in that it cannot be said with a reasonable degree of medical probability that Ashley Harris' death was caused by any breach of the standard of care by Vincent Pernell, M.D.

31. The opinions contained herein are based upon the materials reviewed to date and may be modified as additional information becomes available.

32. This Affidavit of Meritorious Defense is filed in accordance with M.C.L. § 600.2912(e).

7/6/2021
Dated

Vincent Pernell, M.D.

Subscribed and sworn to before me this
6 day of July 2021.

Dana Starks, Notary Public
County of Wayne
Acting in Washtenaw
My Commission Expires: 11-15-2024