UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARY HARRIS, as Personal Representative of the ESTATE OF ASHLEY HARRIS, deceased,

Plaintiff,

v

CORIZON HEALTH, INC.; M.D. VINCENT PERNELL; R.N. LILLIE HARDIN-COLLINS; M.A., L.L.P., SANDRA J. TAYLOR; OFFICER HEAD; JOHN DOES 1-12

Defendants.

No. 2:21-cv-10876

HON. MARK A. GOLDSMITH

MAG. ELIZABETH A. STAFFORD

**AFFIDAVIT OF MERITORIOUS DEFENSE ON BEHALF OF DEFENDANT SANDRA J. TAYLOR, MA, LLP.**

Kristin Totten (P72942)
Kyle M. Williams (P77227)
Michigan Protection & Advocacy Services
Attorneys for Plaintiff
4095 Legacy Parkway
Lansing, MI 48201
(517) 487-1755
ktotten@aclumich.org
kwilliams@drmich.org

Steffani E. Chocron (P45335)
Lipton Law Center, P.C.
Attorney for Plaintiff
18930 W. Ten Mile Road
Southfield, MI 48075
(248) 557-1668
steffani@liptonlawcom

Ronald Chapman (P37603)
Jonathan C. Lanesky (P59740)
Attorneys for Corizon Health Inc. and M.D. Vincent Pernell
Chapman Law Group
1441 West Long Lake Road, Suite 310
Troy, MI 48098
(248) 644-6326
rchapman@chapmanlawgroup.com
jlanesky@chapmanlawgroup.com

John L. Thurber (P44989)
Sara E. Trudgeon (P82155)
Assistant Attorneys General
Attorneys for Defendants Lillie Hardin-Collins, Ebony Head, and Sandra Taylor
MDOC Division
P.O. Box 30217
Lansing, MI 48909
(517) 335-3055
thurberj@michigan.gov
trudgeons@michigan.gov

# AFFIDAVIT OF MERITORIOUS DEFENSE ON BEHALF OF DEFENDANT SANDRA J. TAYLOR, MA, LLP.

STATE OF MICHIGAN )
)
COUNTY OF WASHTENAW )

Sandra J. Taylor, MA, LLP a master's level limited licensed psychologist for the State of Michigan being duly sworn, deposes and states:

1. At the times pertinent to Plaintiff's Amended Complaint, and for 26 years prior to the alleged malpractice, I maintained my license to practice psychology in the State of Michigan and devoted all my professional time to the same. I was hired by the State of Michigan MDOC Women's Huron Valley Correctional Facility (WHV) in the role of a psychologist and Qualified Mental Health Professional (QMHP) on June 25, 2012. I have worked consistently in this role from June 25, 2012, to the present. Prior to that date, I provided contractual psychologist/QMHP services through National Health Resources, as needed, for the Huron Valley Men's, Parnall, and Gus Harrison correctional facilities starting in 2002. This is the first and only legal complaint that has been submitted against me during my career as a psychologist.

2. I have reviewed the Complaint and Amended Complaint filed by Mary Harris in Case No.: 2:21-cv-10876, the Affidavit of Merit of Susan Clark, MA, LLP, the Notice of Intent, Suicide Evaluation Progress Note written by me (dated September 13, 2018, in the Electronic Medical Record), housing unit logbook and video/audio of the observation cell hallway. These documents and video/audio coverage were supplied to me by the defense counsel. I requested the prisoner observation aid (POA) logs that were completed during my shift on September 13, 2018. It is my understanding that these logs have not been located. Video shows that I looked at the POA log both in the morning and afternoon visits to Ms. Harris.

## Applicable Standard of Care

3. The standard of care applicable is doing that which a reasonable and competent Qualified Mental Health Professional (QMHP) would have done under the same or similar circumstances, or that which another reasonable and competent QMHP would have done in treating a patient like Ms. Harris in a prison setting such as Women's Huron Valley Correctional Facility.

## Factual Basis

4. In September 2018, Ashley Harris, then age thirty-one (31), was a female offender at Women's Huron Valley Correctional Facility in Ypsilanti, MI. Ms. Harris was housed in the inpatient psychiatric hospital within the prison. She was assigned to my caseload of patients on this unit. The location of her cell was on the observation cell hallway. She spent most of her time, while housed in the Inpatient Hospital, on suicide precautions with a POA outside her cell. The POA was responsible for watching her through the glass window, writing down observations on a POA log and notifying staff if there were any concerns about the patient. The POA provides 1:1 direct continuous 24/7 observation. Ms. Harris was on suicide precautions due to concerns that she may engage in self-injurious behavior, and/or try to attempt suicide. Ms. Harris was believed to be a moderate risk for self-harm and/or suicide on September 13, 2018, by this writer, thus I ordered Ms. Harris to remain on 1:1 suicide precautions.

5. On September 13, 2018, the housing unit logbook entries show that myself, Sandra J. Taylor MA, LLP, signed into the unit at 9:12 am and out of the unit at 11:50 am. Then again, I signed into the unit at 1:32 pm and out of the unit for the day at 4:22 pm.

6. On September 13, 2018, Video coverage of the observation cell hallway showed that myself, Sandra J. Taylor, MA, LLP, was at Ms. Harris' cell door (#8) at 11:30 am to 11:33 am, and again at 4:16 pm to 4:18 pm.

7. The suicide evaluation progress note that I wrote on September 13, 2018, indicated that Ms. Harris did not want to engage in the suicide evaluation that day since she felt too drowsy to participate. Since there were no changes able to be obtained from the last time she was evaluated, she was kept at moderate risk management plan for suicide and/or self-injury to mitigate risk for this patient. The management plan is a way for the QMHP to communicate with custody staff as to what the patient is allowed to have in their cell, and whether a POA is needed. Ms. Harris was given a suicide prevention gown, suicide prevention blanket, mattress and a 1:1 POA for direct continuous observation. Ms. Harris was not given any items that would be used to harm herself. Ms. Harris presented in a manner that was typical for her, especially in the morning hours. She would typically refuse to come out of her cell and engage in conversation for an evaluation such as she did that day. She would typically say that she was too tired to talk while lying on her bed with her blanket over her body. Ms. Harris would also typically say that she wanted to go back to sleep and would frequently refuse

to talk for suicide evaluations. On September 13, 2018, she was observed to have a typical presentation this not causing any alarm to this writer. If Ms. Harris' cognitive or behavioral presentation would have been different than her typical presentation, I would have immediately notified the other treatment team members and custody staff. It is not within the scope of my practice as a limited licensed psychologist to distribute or prescribe medications.

8. I believe that I acted within the standard of care with respect to the care and treatment of Ms. Harris on September 13, 2018.

9. It is also my professional opinion based on the review of the pertinent records for September 13, 2018 (and other items listed above), that I provided capable, knowledgeable, and appropriately trained psychological/QMHP care for Ms. Harris.

10. It is further my opinion that to the extent that Ms. Harris experienced any injury from the alleged events at issue, it was not the result of any violation of the standard of care.

11. The opinions contained herein are based upon the materials reviewed to date and may be modified as additional information becomes available.

12. This Affidavit of Meritorious Defense is filed with accordance with M.C.L. 600.2912e.

8/19/21
Dated

Sandra J. Taylor, MA LLP
Sandra J. Taylor, MA, LLP

Subscribed and sworn to before me
on the 19 day of August, 2021

James M. Hill
James M Hill, Notary Public
Washtenaw County, Michigan
My commission expires: 8/3/2024

JAMES M. HILL
NOTARY PUBLIC, STATE OF MI
COUNTY OF JACKSON
MY COMMISSION EXPIRES Aug 3, 2024
ACTING IN COUNTY OF Washtenaw